UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LARRY G. MCPHERSON, JR., | |
| Plaintiff, | |
| v. | CAUSE NO. 3:22-CV-1044-DRL-MGG |
| GALIPEAU, | |
| Defendant. | |

OPINION & ORDER

Larry G. McPherson, Jr., a prisoner without a lawyer, was granted leave to proceed against Warden John Galipeau of the Westville Correctional Facility in his official capacity for injunctive relief related to his ongoing need for protection from other inmates as required by the Eighth Amendment. ECF 4. The court construed his complaint as containing a request for preliminary injunctive relief in the form of an immediate transfer to another facility. *Id.* Accordingly, the Warden was ordered to file and serve a response to Mr. McPherson's motion for a preliminary injunction, with supporting documentation and declarations from staff as necessary, addressing the status of Mr. McPherson's current need for protection from other inmates. *Id.* The Warden filed his response by the deadline (ECF 12), and Mr. McPherson filed two letters in reply (ECF 14, 15). Thus, the motion is ripe for adjudication.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a

preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotations omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true, nor do[es] [it] give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must assess the merits as "they are likely to be decided after more complete discovery and litigation." *Id.* at 792.[1] On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

"Mandatory preliminary injunctions" requiring the defendant to take affirmative acts—such as transferring an inmate or providing him with additional medications—are viewed with particular caution and are "sparingly issued[.]" *Mays v. Dart*, 974 F.3d 810,

---

[1] The Seventh Circuit has recognized the first step is "often decisive," and a court need not analyze the remaining elements when that is the case. *Univ. of S. Ind.*, 43 F.4th at 791.

2

818 (7th Cir. 2020) (quotations omitted). Additionally, in the prison context, the court's ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and quotations omitted).

As noted in the court's screening order, Mr. McPherson's claims are "rather broad-brush" overall, but he asserts he is currently in need of protection from other inmates. ECF 4 at 3–4. Specifically, he claims he has a reputation as a snitch, was assaulted in various dorms, and was then moved to the segregation unit but continues to feel unsafe. The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates" and to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). However, "prisons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). This is a high standard. The plaintiff must show that the defendant "acted with the equivalent of criminal recklessness, in this context meaning

they were actually aware of a substantial harm to [plaintiff's] health or safety, yet failed to take appropriate steps to protect him from the specific danger." *Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008). Additionally, the bare fact that an inmate was denied protective custody is "not dispositive" in determining whether a prison official was deliberately indifferent to his safety. *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997).

Based on the record before the court, Mr. McPherson has not made a clear showing he is entitled to a preliminary injunction. At issue is whether prison officials are currently taking reasonable measures to protect him from violence so that he will not be irreparably harmed while this case is pending. Although Mr. McPherson's complaint alleges the Warden is violating his constitutional rights by failing to protect him, the Warden has submitted undisputed evidence to the contrary. On August 29, 2022, Mr. McPherson was transferred to the Westville Correctional Facility. *See* ECF 12-3 at 2. At the end of October 2022, Mr. McPherson began submitting vague grievances about being in danger. *See* ECF 12-1 at 1–6. A response dated November 3, 2022, indicates he was moved to a new housing unit and that his concerns were forwarded to facility staff. ECF 12-2 at 1. Over the next week he was moved three more times. ECF 12-3 at 3. On November 21, 2022, Mr. McPherson received a conduct report because he was seen via CCTV "striking another Incarcerated Individual multiple times in the face and body regions before dragging him to the ground." ECF 12-4. He pled guilty to the offense. ECF 12-5. The next day, he was relocated to "DSC 8205," described as segregated administrative housing "SEG-AH." ECF 12-3 at 1, 3. As of the date the Warden filed his response, Mr. McPherson remained in that segregated housing unit. *Id*. Shannon Smith, a Grievance Specialist at the Westville

4

Correctional Facility, submitted an affidavit attesting to these facts. *See generally* ECF 13. Ms. Smith describes the segregated housing unit where Mr. McPherson currently resides as "the most secure level at this facility." *Id*. at 2. There, Mr. McPherson is housed "in a cell alone, he is not placed in common areas with other inmates, and he only leaves his cell upon his own request (such as to shower to go to recreation). When he does leave the cell, he is escorted by a minimum of two prison officials." *Id*. Ms. Smith indicates he is not currently scheduled to be relocated. *Id*.

In his reply letters, Mr. McPherson does not directly dispute any of these facts. He claims he was told he "could" be forced back to General Population, but he doesn't say by whom.[2] ECF 14 at 1. He believes his "life is continually being placed in harms way," but he doesn't say why. *Id*. He says he feels "safe in segregation" but laments that if he is placed back in General Population he "could be killed."[3] *Id*. at 2. He wants to "remain in Segregation on Administrative Hold pending transfer" or until he is released because he fears for his safety, but he doesn't provide any details about why that would be necessary.

Overall, his response letters provide only vague, generalized descriptions of danger. Considering that Mr. McPherson is currently residing in the most secure part of the prison—where he admits to feeling safe—and that the facility staff is both aware of and has responded to his past requests, Mr. McPherson's speculation about future danger and his possible relocation is not a sufficient basis on which to grant a preliminary

---

[2] He later goes on to say that his caseworker told him no one with an upcoming release date can be released from segregation.

[3] He further claims his release date has been moved from March 20, 2023 to June 13, 2023 due to a miscalculation, and he fears the longer he is in prison the greater danger will remain.

injunction. *See, e.g., Klebanowski*, 540 F.3d at 639-40 (expressing concerns for one's safety or asking to be moved, without linking it to a specific risk of harm, is insufficient); *Dale v. Poston,* 548 F.3d 563, 570 (7th Cir. 2008) ("Prison officials do not violate the Eight Amendment because the mode of protection they offer does not sit well with a prisoner. Rather, if they offer reasonable protection from the threat, they have done their duty."). Because the record does not reveal the Warden is being deliberately indifferent to Mr. McPherson's safety concerns, he is not likely to succeed on the merits of his claim. *Univ. of S. Ind.*, 43 F.4th at 791 (plaintiff cannot be given the benefit of unsupported inferences; the court must assess the merits as they are likely to be decided following additional discovery). Accordingly, the motion for preliminary injunction will be denied.

One of Mr. McPherson's letters also contains a request for counsel. *See* ECF 15. "There is no right to court-appointed counsel in federal civil litigation." *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014) (*citing Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007)). However, in some circumstances, the court may ask counsel to volunteer to represent indigent parties for free.

> When confronted with a request under § 1915(e)(1) for pro bono counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?

*Pruitt v. Mote*, 503 F.3d at 654.

Here, there is no indication Mr. McPherson has made any attempt to obtain counsel on his own. "If . . . the indigent has made no reasonable attempts to secure counsel . . ., the court should deny any [such requests] outright." *Jackson v. County of*

6

*McLean*, 953 F.2d 1070, 1073 (7th Cir. 1992); *see also Pruitt*, 503 F.3d at 654; *Bracey v. Grondin*, 712 F.3d 1012, 1016 (7th Cir. 2013). Thus, his request will be denied.

For these reasons, the court:

(1) DENIES the motion for preliminary injunction (ECF 5); and

(2) DENIES the request for counsel (ECF 15).

SO ORDERED.

April 19, 2023

*s/ Damon R. Leichty*
Judge, United States District Court